## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| Vijaya Lakshmi Puli,<br><br>*Plaintiff,*<br><br>vs.<br><br>United States Department of Homeland Security; United States Department of State,<br><br>*Defendants.* | Case No.:  3:25-cv-1007<br><br>**COMPLAINT** |

## INTRODUCTION

Penalties, or "sanctions," imposed by federal agencies under the Administrative Procedure Act ("APA"), must be proceeded by notice and an opportunity to respond to an agency's allegations. 5 U.S.C. § 551(10). Here, defendant DHS has sanctioned Plaintiff Vijaya Puli by entering a finding of inadmissibility for misrepresentation, which triggers a lifetime bar to reentry to the U.S. However, this finding was made secretly, and without notice or an opportunity to respond. Plaintiff Puli has taken every administrative action available to ascertain the basis of this final agency action and to correct it. However, DHS has refused to provide her procedural due process.

In one of her many attempts to resolve this issue with DHS, Plaintiff filed a Freedom of Information Act ("FOIA") request on August 5, 2025. In her request she sought information she could rebut related to the fraud finding. DHS has yet to respond to this request.

For its part, the State Department had abdicated its role in making independent decisions on admissibility and had refused to complete the adjudication of Plaintiff's visa application because of DHS's findings.

1

## PARTIES

1.     Plaintiff Vijaya Lakshmi Puli is an Indian national eligible for an H-4 dependent visa. She and her H-1B husband have a residence in Davidson, North Carolina. She returned to India to visit family and required a new visa stamp prior to her return. When she appeared at the U.S. consulate for the stamp, her application for a visa was placed on hold because DHS had unlawfully found her guilty of fraud or material misrepresentation. Plaintiff has been injured by the defendant's final action sanctioning her with a lifetime bar to entry into the United States. This action was taken in violation of all required procedural safeguards created by the APA and defendant's own regulations.

2.     Defendant United States Department of Homeland Security ("DHS") which is the parent agency of United States Citizenship and Immigration Service ("USCIS" or "Defendant"). DHS is an executive agency of the United States, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).

3.     Defendant United States Department of State ("DOS") has authority over consulates and adjudication of visa applications. DOS is an executive agency of the United States, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).

## JURISDICTION

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, or treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 2201, as this is a civil action seeking, in addition to other remedies, a declaratory judgment and writ of mandamus.

5.     The United States has waived sovereign immunity, allowing this Court to review challenges to final agency actions and unlawfully withheld action under Administrative

Procedure Act ("APA"). 5 U.S.C. § 702. The standards of review for these actions are found in 5 U.S.C. § 706 and the body of law interpreting the APA.

6.　　　There is a "strong presumption that Congress intends judicial review of administrative action," *Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667, 670 (1986), and it is "familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002).

7.　　　There is no alternative forum to challenge the questions of law presented in this case related to DHS's determinations that Plaintiff is inadmissible, failed to maintain status, lack good moral character, or made a knowing and willful misrepresentation to procure an immigration benefit.

**A. <u>Judicial Review of Final Agency Actions in Violation of the APA</u>**

8.　　　Plaintiff was informed by defendant DOS that defendant DHS found her inadmissible and entered this information into an electronic database without any proceedings ever being initiated or any notice provided that would have allowed her to produce evidence to counter derogatory information and present evidence on his behalf.

9.　　　Defendant DHS has placed a "hit" in its shared system of records that marks Plaintiff inadmissible or ineligible for any immigration benefit due to alleged fraud or willful misrepresentation under the Immigration & Nationality Act ("INA") § 212(a)(6)(C)(i) (8 U.S.C. § 1182(a)(6)(C)(i)); or  deportable for failing to continuously maintain lawful status under INA § 237(a)(l)(C)(i) (8 U.S.C. § 1227(a)(l)(C)(i).

10.　　　DHS's decision against Plaintiff is the culmination of a process known only to the agency and its constituent parts for which there is no further opportunity to review.

11.    This is an active case and controversy. The parties are sufficiently adversarial, and Plaintiff is aggrieved after having a notation of fraud, failure to maintain status, or lack of good moral character placed on his records, thereby permanently branding him as persona non grata.

12.    The administrative record does not, and cannot establish, or otherwise, support the agency's finding of fraud or misrepresentation. Nonetheless, DHS created a policy and procedure to make secret determinations, without notice and opportunity to Plaintiff to mount any defense, which are not in accordance with law. This Court can redress the Defendant's actions.

13.    Interpretations of a statute involve pure questions of law that are reviewable under the APA.

14.    An evaluation that a foreign national "made a fraudulent or willful misrepresentation," failed to maintain lawful status or "lacked good moral character" are nondiscretionary, legal determinations that involve predicate criteria. *Cervantes-Gonzalez v. INS*, 244 F.3d 1001, 1004 (9th Cir. 2000); *Kungys v. United States*, 485 U.S. 759, 108 S. Ct. 1537 (1988).

15.    "[A]n administrative agency is required to adhere to its own internal operating procedures." *See also Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004).

16.    Indeed, an agency "does not have the discretion to misapply the law," *Mejia v. Ashcroft*, 298 F.3d 873, 878 (9th Cir. 2002); an unreasonable reading of the regulatory language is therefore arbitrary and capricious. *See Salehpour v. INS*, 761 F.2d 1442, 1447 (9th Cir. 1985) ("Where the objective criteria of a regulation are clearly met, there is no room for an agency to interpret a regulation so as to add another requirement.").

17.     There are no statutory or judicially created principles that preclude this Court from setting aside DHS's decision-making, policies, and its interpretation of the INA if any is found to be arbitrary, capricious, or contrary to law. See 5 U.S.C. § 706.

18.     Entry of an order to set aside, vacate and issue declaratory judgment in Plaintiff' favor will serve a "useful purpose" by reinforcing that the judiciary is "the final authority on issues of statutory construction" with the power to ensure federal agencies follow their own policy and regulations. *Chevron, U.S.A., Inc. v. Nat. Resources Def. Council*, 467 U.S. 837, 843 (1984); *Kelly*, 831 F.2d at 191-92.

### B.  Unreasonable Delay of Final Agency Action

19.     This Court may also compel agency action that is unlawfully withheld or unreasonably delayed, or which is contrary to law, an abuse of discretion, or arbitrary and capricious. 5 U.S.C. §§ 555(b), 706.

20.     This Court may also compel agency action that is unlawfully withheld or unreasonably delayed, or which is contrary to law, an abuse of discretion, or arbitrary and capricious. 5 U.S.C. §§ 555(b), 706.

21.     A visa refusal under 8 U.S.C. § 1201(g) is not a final agency action. Rather a refusal places an application on hold, awaiting the final action. Thus, the doctrine of consular non-reviewability is inapplicable here.

### C.  Freedom of Information Act

22.     Individuals are entitled to file FOIA requests to seek information or evidence in possession of the government. 5 U.S.C. § 552.

23.     The relevant agency must respond to the request within twenty (20) business days. *Id.* at § 552(a)(6)(A), (6)(B).

24. If the agency fails to comply with its statutory deadlines the requestor can proceed to court, seeking an order for the agency to produce the requested information.

## VENUE

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C), because Plaintiff reside in Mecklenburg County, Charlotte, North Carolina, and there is no real property at issue.

## LEGAL BACKGROUND

### A. APA Review of Final Agency Action

26. Federal agencies must comply with the APA when crafting and enforcing final agency actions (e.g., decisions, sanctions, orders, regulations, and legislative rules). 5 U.S.C. § 553.

27. Courts have authority to review and invalidate final agency actions that are not in accordance with the law, procedurally defective, exceed agency authority, lack substantial evidence, or are arbitrary and capricious. 5 U.S.C. § 706.

28. The APA defines "adjudication" to be the "agency process for the formulation of an order..." *Id.* at § (7).

29. The APA defines an administrative agency "order" as: "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing…" 5 U.S.C.§ 551(6) (emphasis added).

30. Agency orders may take the form of "sanctions" or "relief" (granting of a benefit). The APA defines a "sanction," *inter alia,* to be:

- prohibition, requirement, limitation, or other condition affecting the freedom of a person;

- imposition of penalty or fine;
- taking other compulsory or restrictive action;

*Id*. at § (10).

31.     The "agency action" (i.e. sanction or relief) requires written notice to the affected party, an opportunity to respond, and an explanation of its final action including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act…" 5 U.S.C. § 551(13).

32.     The agency "…shall make available for public inspection in an electronic format its …(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases…" 5 U.S.C. § 552(a)(2), and (5).

33.     Upon request the agency must provide access to an individual's records and receive copies of all documents and data where the individual is referenced. Id. § 552a(d) and (e).

34.     Agencies are required to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination…" *Id*. at §552a(e)(5) (emphasis added).

35.     DHS is required to provide notice of an adjudication to "interested parties." 5 U.S.C. § 554(b). This notice must include information on the timing of the adjudication, the legal authority the agency relies on for the adjudication, and the matters of fact and law at issue. *Id.*

36.     The agency must also provide the interested party with the opportunity to submit evidence and legal arguments supporting his request for relief. *Id*. at § 554(c). The agency must also provide the individual with notice of adverse final agency actions. 5 U.S.C. 555(e).

7

37. When conducting an adjudication resulting in a sanction, the proponent of the order has the burden of proof. 5 U.S.C. § 556(d). The interested party harmed by the sanction or adverse order is entitled to counsel and an opportunity to view evidence against him and submit new evidence in rebuttal. *Id*.

38. Agencies must comply with Constitutional due process requirements when their orders include sanctions. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner.'" *Id*. (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, (1965)).

39. The Supreme Court explained that any final agency action based on adverse facts must be preceded by notice and an opportunity to be heard. *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 2019).

**B. Unreasonable Delay of Agency Action**

40. The APA requires agencies to complete adjudications in a "reasonable time," taking into account "the necessity and convenience of the parties." 5 U.S.C. § 555(b).

41. When the agency fails to meet this standard aggrieved parties can challenge the delay under 5 U.S.C. § 706(1).

**IMMIGRATION AND NATIONALITY ACT**

42. The INA, 8 U.S.C. § 1101, et seq, divides authority primarily between three separate agencies: DHS, DOL, and DOS.DHS is responsible for determining if the applicant for an immigration benefit meets all the substantive statutory criteria for a given visa category or other benefit type. *See* 8 U.S.C. §§ 1101, 1184, 1153.

43. DOS has the limited role of determining statutory admissibility as defined by § 1182(a).

44.     Section 1182(a) of Title 8 designates "[c]lasses of aliens ineligible for visas or admission." 8 U.S.C. § 1182(a).

45.     For instance, "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i).

46.     A misrepresentation must be knowing, willful and material, meaning the applicant must be fully aware of the nature of the information sought and knowingly, intentionally, and deliberately make an untrue statement. *Matter of S- and B-C-*, 9 I. & N. Dec. 436, 447 (A.G. 1961).

47.     The definition of "materiality" with respect to 8 U.S.C. § 1182(a)(6)(C)(i) has two components: A misrepresentation made in connection with an application for a visa or other documents, or with admission to the United States, is material if either: (1) The individual is ineligible on the true facts; or (2) "the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he or she be inadmissible." Id.

48.     A finding of fraud or misrepresentation is a sanction as defined in the APA. See 5 U.S.C. § 551(10).

49.     The DOL, DHS, and DOS all have authority to enter fraud and misrepresentation findings for communications made to the respective agencies.

50.     The ground of inadmissibility is a penalty and thus qualifies as a "sanction." Policy Manual, Vol. 8, part j, Ch. 2   https://www.uscis.gov/policy-manual/volume-8-part-j-chapter-2  (last visited July 31, 2025)

9

51.     The sanction only applies to communication from the "alien" or foreign national. 8 U.S.C. § 1182(a)(6)(C)(i). Thus, these sanctions can only be made against "the alien" or foreign national. The petitioning US company, by definition, cannot be found "inadmissible" because neither the corporate entity nor the US owners need visas to enter the country or otherwise establish admissibility to the US.

52.     To sanction a foreign national under 8 U.S.C. § 1182(a)(6)(C)(i) the relevant agency must determine if the "alien" made an affirmative communication directly to an agency administering portions of the INA.

53.     The relevant agency must find that the "alien's" communication with the agency was in conjunction with a request for immigration benefits. *Id.*

*54.*     The relevant agency must find that the "alien" knew their communication was false at the time it was made to the agency. *Id.*

55.     Finally, the relevant agency must determine if the "alien's" knowingly false communication was material to the final agency action. *Id.*

56.     The Government will not consider a misrepresentation "material," and therefore will not find an alien inadmissible based on the misrepresentation if the noncitizen retracts or corrects the misrepresentation once the government notifies the noncitizen of the allegation. *See Matter of R-R-*, 3 I. & N. Dec. 823 (BIA 1949); *Matter of M-*, 9 I. & N. Dec. 118 (BIA 1960); *Matter of R-S-J-*, 22 I. & N. Dec. 863 (BIA 1999).

57.     USCIS's Policy Manual instructs that "the [adjudicating] officer should keep in mind the severe nature of the penalty for fraud or willful misrepresentation. The person will be barred from admission for the rest of his life unless the person qualifies for and is granted a

waiver. The officer should examine all facts and circumstances when evaluating inadmissibility for fraud or willful misrepresentation." Policy Manual, Vol. 8, part j, Ch. 2.

**STATEMENT OF THE FACTS**

**A. H-1B Lottery Changes**

58.    In 2020, DHS altered the manner in which the annual H-1B lottery was conducted. However, the process had predictable flaws that commenters to the final rule predicted with great accuracy.

59.    Under the new system, companies would register potential employees in a lottery, and if selected the companies would be allowed to file H-1B petitions for them.

60.    The registration forms asked for information about the potential H-1B employee and the name of the HR or management member who was actually submitting the registration.

61.    All of this was done via a DHS computer system.

62.    As originally created, the lottery system could be gamed by multiple employers filing for the same slate of applicants, thereby increasing the odds of a particular candidate's selection.

63.    Although DHS discounted this possible outcome in the rulemaking process, the commenters proved to be correct.

64.    To rectify the situation and cover up for its negligence in allowing the flawed rule, DHS began investigating companies with suspicious patterns of lottery submission filings.

65.    DHS began issuing notices of intent to revoke, and revocation notices to companies with suspect filings. These actions complied with the APA and procedural due process.

66.     DHS also began secretly compiling information about companies and HR employees who filed registrations that "unfairly increased the odds of selection."

67.     DHS then identified the immigration status of all HR employees whose names were listed on the registration forms.

68.     Any non-US citizen HR employee who submitted a tainted registration form was determined to have committed fraud or willful misrepresentation. This finding made each affected HR employee permanently inadmissible to the US.

69.     However, unlike the petitions that had been provided procedural due process prior to revocation, DHS did not inform HR employees that they were found to have violated 8 U.S.C. § 1182(a)(6)(C)(i), or of the lifelong bar to reentry.

70.     Rather, DHS made the calculated, and bad faith, decision to withhold notice of its actions until the individual nonimmigrant HR employees left the country to visit family.

71.     By design, the first time an affected HR employee learned of the lifelong sanction was when the U.S. consulate denied or refused a visa, or at Port of Entry when Customs and Border Protection issued an expedited removal order.  Neither of these actions can be reviewed in court.

72.     In crafting this plan, DHS intentionally violated the APA and these HR employees' rights to procedural due process.

### B. Plaintiff Puli

73.     Plaintiff Puli is married to an H-1B visa holder who has an approved Form I-140 and is eligible for an H-4 dependent spouse visa.

74.     H-4 visa holders are eligible to apply for employment authorization when their spouse has an approved Form I-140.

12

75.     Shortly after her spouse's Form I-140 was approved, Plaintiff applied for and received her Employment Authorization Document ("EAD").  She began searching for employment thereafter.

76.     Plaintiff's husband had a work acquaintance who told him an information technology ("IT") consulting firm named Data Cloud, Inc. may have an opening in their human resources department ("HR").

77.     Plaintiffs husband requested and received the contact information for the firm and asked about the opening.

78.     Data Cloud, Inc. asked for proof that Plaintiff had an EAD and was authorized to work legally in the U.S. In response, Plaintiff provided copies of her social security card, EAD, passport, I-94, and driver's license.

79.     These documents were ultimately received by Kishore Ambatapudi, who was managing Cloud Data, Inc.

80.     Mr. Ambatapudi never contacted Plaintiff about the position, and nothing else was said about the position.

81.     Mr. Ambatapudi proceeded to steal Plaintiff's identity and submit multiple H-1B lottery registrations under her name.

82.     DHS did not inform Plaintiff of its intent to permanently bar her from the U.S. prior to taking this action.

83.     Had DHS followed the law, and provided procedural due process, Plaintiff could have provided the following evidence in response:

    a. Bank statements showing she never received deposits or paychecks from Data Cloud, Inc.
    b. Tax forms and returns showing she had never worked for Data Cloud, Inc.

13

84.     Plaintiff could have tracked down Mr. Ambatapudi for a statement or confession that he had stolen her identity.

85.     However, DHS intentionally violated the law, cut corners, and sanctioned Plaintiff for life.

86.     Plaintiff learned for the first time of the inadmissibility finding when she appeared for a visa stamp at the U.S. consulate. She was told that DHS had entered a finding of fraud or misrepresentation against her.

87.     As a result, DOS was unable to continue processing her application and gave her an INA 221(g), 8 U.S.C. § 1201(g), notice.

88.     On March 10, 2025, Plaintiff appealed to DOS LegalNet. She explained that she never worked for Data Cloud, and she had been the victim of identity theft.

89.     LegalNet informed Plaintiff that:

…the H-4 visa application was refused under section 212(a)(6)(C)(i) of the [INA] based on a finding originally made by [DHS]. Consular officers cannot remove an inadmissibility finding originally entered by DHS.

If you wish to Address the factual or legal basis of the ineligibility finding, you will need to contact DHS. The Department of Homeland Security operates the Traveler Redress Information Program (TRIP), www.dhs.gov/trip as a means of submitting such inquiries.

90.     Plaintiff contacted DHS TRIP and provided evidence of her innocence, which includes financial records, and a declaration proclaiming her innocence.

91.     Plaintiff contacted Immigration and Customs Enforcement ("ICE") and USCIS to report the identity theft.

92.     Plaintiff, through counsel, eventually located Mr. Ambatapudi, who absconded and returned to Indian.

14

93.     Mr. Ambatapudi provided a declaration taking responsibility and confirming he never met Plaintiff, never employed Plaintiff, and that she never submitted H-1B lottery registration on behalf of Data Cloud.

94.     Finally, Plaintiff filed a FOIA request on August 5, 2025, seeking:

- All files, data, records, and information related to Data Cloud, Inc. FY 2022 and 2023 H-1B lottery registrations. Including but not limited to the IP addresses used for each registration.
- Provide all files, data, records, and information related to and identifying any company alleged to have conspired or colluded with Data Cloud Inc to gain an unfair advantage in FY 2020 2 and 2023 H-1B lottery registrations.
- For each of the Data Cloud Inc.'s FY 2022 and 2023 H-1B lottery registration suspected or alleged to have been undertaken in an attempt to gain an unfair advantage in the selection process provide: a unique identifier for each beneficiary of the registration; The name of each company filing a registration for that beneficiary; The IP address for each individual registration; The name of the authorized signatory on each registration; and, date and time of the registration

95.     DHS has yet to respond to this request.

96.     However, DHS has done nothing to rectify the situation or correct its undeniable violations of law.

97.     Plaintiff's visa application remains pending with DOS under INA 221(g).

## COUNT I

### (Violation of the Administrative Procedure Act)
### DHS engaged in arbitrary, capricious, and unlawful final agency action.

98. Plaintiff incorporates the prior paragraphs as if restated here.

99.     Federal courts have authority to hear challenges to final agency actions, and hold unlawful actions that are:

1. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
2. contrary to constitutional right, power, privilege, or immunity;
3. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
4. without observance of procedure required by law;

15

5. unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute…

5 U.S.C. § 706.

100. Precedent, regulations, and policy with the force and effect of law supplement the bare bones" of federal statutes, and that, even in areas of expansive discretion, agencies must follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266, 268, (1954).

101. Under the *Accardi* doctrine, an individual can sue an agency for failure to follow the agency's own rules and procedures. *Accardi*, 347 U.S. at 268; Alcaraz, 384 F.3d at 1162.

DHS failed to provide the interested party, Plaintiff, with notice and an opportunity to respond to the sanction rendering him inadmissible for life.

102. The inadmissibility adjudication has no impact on an employer. Thus, the "interested party" in an inadmissibility adjudication is the foreign national. DHS was required to give Plaintiff, the interested party, an opportunity to provide evidence, make legal arguments, and rebut agency allegations. 5 U.S.C. § 554(c).

103. DHS violated the APA and its own regulations when it did not disclose the existence of "derogatory information" prior to ordering the sanction. This requirement is anchored in both due process, the APA at 5 U.S.C. § 551(13), and 8 C.F.R. § 103.2(b)(16).

104. DHS did not heed the plain language of the statute and its binding policy to sanction Plaintiff as inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i).

105. The fraud finding is the agency's "final disposition." Thus, the entry of the finding is an "order" which is separate and discreet from other final dispositions. However, DHS failed to comply with 5 U.S.C. § 554(b) which requires timely notice of the allegations and an opportunity to provide a meaningful response.

16

106. DHS was required to give Plaintiff "prompt notice" of an adverse decision in an agency action. 5 U.S.C. § 554(e). This notice must include an explanation of the grounds for the denial.

107. DHS violated § 554(e), as it did not provide timely notice, nor did it provide a written explanation of the adverse decision. DHS is conducting bad faith adjudication by ambush, depriving affected parties of procedural rights, and leaving inadmissibility findings a secret which is only discovered when Plaintiff apply for an immigration benefit in the United States or a visa at a US consulate.

108. As the proponent of the order sanctioning Plaintiff, DHS is required to meet the burden of proof and support its decision on the evidence in the administrative record. 5 U.S.C. § 556(d). To meet its burden of proof DHS must satisfy its own eight-step process prior to entering a sanction based upon fraud or misrepresentation. *See* Policy Manual, Volume 8, Chapter 2, Section E. This process was not followed.

109. DHS failed to create an administrative record that would allow this Court to determine if the burden was met, or if the agency action sanctioning Plaintiff is supported by substantial evidence.

110. DHS has not shown that any component agency complied with any of the procedural requirements before making an inadmissibility determination.

111. DHS adjudicated Plaintiff's admissibility in violation of all applicable statutory law, agency precedent, and its own policy.

112. DHS instituted an unlawful and clandestine program to sanction foreign nationals like Plaintiff without adhering to due process requirements. DHS has taken this approach in an attempt to hide its actions from judicial review. DHS has destroyed any sense of fairness in the

17

inadmissibility adjudication process and entered sanction orders without any notice or opportunity to be heard.

113. The inadmissibility determinations is arbitrary, capricious, and not in accordance with law and agency procedure. 5 U.S.C. §§ 706(2)(A), (D).

## COUNT II

### (Violation of the Administrative Procedure Act)
### DOS Unreasonably Delayed Adjudication of the Visa Application

114. Plaintiff alleges and incorporates by reference the foregoing paragraphs as though fully set out herein.

115. The APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Section 555(b) creates a non-discretionary duty to conclude agency matters. *Litton Microwave Cooking Prods. v. NLRB*, 949 F.2d 249, 253 (8th Cir. 1991).

116. A violation of this duty is a sufficient basis for mandamus relief. The APA permits this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Plaintiff alleges that the application has been in administrative processing beyond a reasonable time period for completing administrative processing of the adjustment of status application.

117. DOS has placed the visa application in limbo, refused to move forward to final action, and delayed solely on the grounds of an unlawful inadmissibility finding entered by DHS.

118. DOS has not exercised its independent judgment as it is required to do by law but has unreasonably deferred to DHS and its procedurally flawed finding of fraud or misrepresentation.

119. The combined delay and failure to act on Plaintiff's visa application is therefore unreasonable as a matter of law.

120. There is no alternative, adequate or reasonable forms of relief available to Plaintiff.

## COUNT III

### (Freedom of Information Act)

121. Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

122. Under FOIA, Defendants were required to respond to Plaintiff's FOIA requests and to notify Plaintiff of the agency's determination within thirty working days after receiving the request. 5 U.S.C. § 552(a)(6)(A), (6)(B).

123. Defendants' failure to make the requisite determination and to communicate it to the Plaintiff within the time allowed by the statute violates the FOIA. 5 U.S.C. § 552(a)(6)(A)(i).

## PRAYER FOR RELIEF

Wherefore, in view of the above authority, Plaintiff prays the Court:

1. Takes jurisdiction over this matter;

2. Sets aside and vacates DHS's sanction rendering Plaintiff inadmissible for life for "fraud or willfully misrepresenting a material fact" in 8 U.S.C. § 1182(a)(6)(C)(i);

3. Orders DHS to comply with the law and provide Plaintiff with notice, and opportunity to respond, and written decision based on law and fact prior to sanctioning him with the inadmissibility finding.

4. Sets aside and vacates DHS's adjudication, mark, hit, flag, or label signifying Plaintiff' inadmissibility;

19

5.    Order DOS to adjudicate Plaintiff's visa application without considering the

       unlawful fraud finding, and make a final agency action;

6.    Compel DHS to produce all responsive information to Plaintiff's FOIA request; and,

7.    Award Plaintiff attorney's fees under the Equal Access to Justice Act.


Dated: December 19, 2025,                              Respectfully submitted,

                                                        s/ Helen L. Parsonage
                                                        Helen L. Parsonage
                                                        NC Bar Number 35492
                                                        Attorney for the Plaintiff
                                                        Elliot Morgan Parsonage PLLC
                                                        328 N Spring Street
                                                        Winston-Salem, NC 27101
                                                        Phone: (336)714-4480
                                                        Email: hparsonage@emplawfirm.com


                                                        Jonathan D. Wasden*
                                                        MS Bar No. 100563
                                                        Attorney for the Plaintiff
                                                        Wasden Law
                                                        2593 W Torana Dr
                                                        Meridian, ID 83646
                                                        Phone: (843)872-4978
                                                        Email: jon@wasden.law

                                                        *Pro Hac Vice Application to be filed.


20

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that on December 19, 2025, the foregoing document was filed through the Court's CM/ECF system, which will transmit an email notification and electronic hyperlink of that filing to the Court. A copy of the foregoing will be served by causing a true and correct copy to be deposited with the United States Postal Service, Certified Mail, for delivery to the following individuals at the addresses listed:

**United States Department of Homeland Security**
2707 Martin Luther King Jr. Ave, SE
Washington, DC 20528-0485

**United States Department of State**
c/o The Executive Office of the Legal Adviser and Bureau of Legislative Affairs
Suite 5.600, 600 19th Street, NW
Washington DC 20522

**U.S. Attorney's Office for the Western District of North Carolina**
c/o Civil Process Clerk
227 West Trade St.
Suite 1650
Charlotte, NC 28202

**Pam Bondi, U.S. Attorney General**
U.S. Department of Justice, Justice Management Division
950 Pennsylvania Ave. NW, Room 1111
Washington, D.C. 20530-0001

Dated: December 19, 2025,                                Respectfully submitted,

                                                         s/ Helen L. Parsonage
                                                         Helen L. Parsonage
                                                         Elliot Morgan Parsonage PLLC

21